IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA            :

v.                                  :            CRIMINAL NO. 23-268

MISTER TYRELL TAYLOR                :

### GOVERNMENT'S MOTION FOR PRETRIAL DETENTION

As revealed by an extensive investigation by the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), the defendant directed the straw purchase of at least 48 firearms from August to December 2020. Approximately 17 of those firearms have since been recovered in crimes, including shootings, some just weeks after purchase. The defendant's cell phone records show communications with at least two people who were arrested with the straw-purchased firearms, indicating that the defendant was involved in illegally transferring the firearms. Sure enough, the defendant's social media messages show many pictures of firearms and messages about selling or trading firearms. On June 20, 2023, the defendant was indicted by a federal grand jury with conspiracy and 27 counts of aiding and abetting false statements to a federal firearms licensee.

The illegal firearm purchases charged in the indictment occurred prior to December 2020, however, the defendant's conduct continues to inflict harm on the community, as the straw-purchased guns continue to show up in crimes. One pistol was recovered in September 2022 bearing a "switch" to make it fully automatic. Furthermore, in addition to the 48 straw-purchased guns listed in the indictment, the defendant purchased at least 20 firearms himself around the same time period. Approximately five of those have been recovered in crimes, including one that

was recovered 25 days after the defendant purchased it, and one that was just recovered by law enforcement in May 2023. Yet many more guns that the defendant obtained—either himself or through straw purchasing—have *not* been recovered by law enforcement, and in fact, remain completely unaccounted for. In his last interview with ATF agents, in October 2021, the defendant claimed that one firearm had been recently stolen (when in fact it had been recovered by law enforcement months earlier), but then claimed he was unsure whether any of his other firearms were missing, because he does not keep up with them. As of this filing, the defendant has not provided any credible information accounting for the remaining firearms.

As a result, pretrial release here would threaten the community. Releasing the defendant would give him an opportunity to transfer any of the remaining firearms in his possession—both for financial gain and to conceal his illegal activities, as he has repeatedly tried to do during the course of the ATF investigation by making demonstrably false statements to investigators and by deleting social media records. No conditions of release would reasonably mitigate that risk.

Because no condition or combination of conditions will assure the safety of the community or the Defendant's appearance, the government moves pursuant to 18 U.S.C. §§ 3142(e) and (f) for a detention hearing and pretrial detention of the Defendant.

## I.  FACTS

In support of this motion, the government makes the following representations and proposed findings of fact:

### A.  The Evidence Against the Defendant

On June 20, 2023, a grand jury indicted the defendant for conspiracy to make false statements to a federal firearms licensee, in violation of 18 U.S.C. § 371, and 27 counts of aiding

and abetting making false statements to a federal firearms licensee, in violation of 18 U.S.C. §§ 924(a)(1)(A) and 2. Probable cause thus exists to believe the defendant violated those statutes.

The anticipated trial evidence clearly demonstrates the defendant's guilt. Based upon interviews with members of the defendant's conspiracy, the defendant persuaded another person to purchase firearms on his behalf by making false statements on ATF Form 4473s (forms that are required by law to be completed truthfully during the purchase of a firearm)—specifically, that the purchaser was the actual purchaser of the firearm, when in reality he was buying them for the defendant. The defendant decided what gun stores—that is, federal firearm licensees ("FFLs")—to visit and provided instructions on what firearms to purchase and how much to spend. The defendant would drive the straw purchaser to FFLs (or have another person drive them) and would either provide directions by phone or go inside the FFL with the straw purchaser; an employee of one of the FFLs from which the firearms were purchased told investigators that the defendant was a regular customer and was often in the store with the person later identified as the straw purchaser. The defendant then paid the straw purchaser in cash or other forms of compensation in exchange for the illegally purchased firearms. In addition, the defendant paid the straw purchaser to sign paperwork transferring firearms from the defendant's name into the straw purchaser's name—purporting to sell the firearms to the straw purchaser. But the defendant kept the firearms he purported to sell in his possession.

Between August and December 2020, the defendant directed his co-conspirator to straw purchase at least 48 firearms, including approximately four firearms that the defendant purported to sell to him. Approximately 17 of these firearms have been recovered by law enforcement, including in connection with shootings in Philadelphia. To take just a few examples:

3

- On August 31, 2020, the defendant directed his co-conspirator to purchase a Glock, model 36, .45 caliber semi-automatic pistol.[1] Philadelphia Police recovered the pistol just nine days later in the possession of S.B., a three-time convicted felon.

- On October 4, 2020, the defendant directed his co-conspirator to purchase one firearm and to transfer a firearm from the defendant's name to his own. That firearm was a Glock, model 29, 10mm semi-automatic pistol.[2] Pennsylvania State Police recovered the pistol 48 days later in the possession of R.J., who lacked a license to carry a firearm.

- On October 13, 2020, the defendant directed his co-conspirator to purchase a Springfield, model XDS, 9mm semi-automatic pistol.[3] That firearm was recovered 56 days later in the possession of R.R., who lacked a license to carry a firearm and was carrying 28 packets of crack cocaine. The serial numbers on the firearm's slide and barrel were obliterated, but the serial number on the dust cover (which had been covered by a laser sighting device) was intact.

- On November 27, 2020, the defendant directed his co-conspirator to purchase four firearms, including a Glock, model 20, 10mm semi-automatic pistol.[4] That firearm was recovered by Philadelphia Police just 14 days later.

- Another firearm the defendant directed his co-conspirator to purchase on November 27, 2020 was a Smith & Wesson, model M&P Shield, .45 caliber semi-automatic pistol. That firearm was used in a shooting in Philadelphia 56 days later. And it was

---

[1] This pistol is charged in Count Three of the indictment.
[2] This pistol is charged in Count Ten of the indictment.
[3] This firearm is charged in Count Thirteen of the indictment.
[4] This firearm is charged in Count Twenty-Two of the indictment, as are the other firearms purchased on November 27, 2020.

recovered about 100 days after that (156 days after purchase) in the possession of B.T., who was charged with pointing the firearm at his ex-girlfriend and strangling her, and who had previously been convicted of felony aggravated assault and possession of a controlled substance with intent to distribute.

- On December 18, 2020, the defendant directed his co-conspirator to buy three firearms, including a Glock, model 19, .45 caliber semi-automatic pistol.[5] That firearm was used 58 days later in a shooting in Philadelphia in which two people were wounded by gunfire and a third was killed.

- On December 21, 2020, the defendant directed his co-conspirator to purchase two firearms, including a Glock, model 36, .45 caliber semi-automatic pistol.[6] That firearm was recovered by Philadelphia Police 23 days later in the possession of K.B., who lacked a license to carry a firearm and was carrying 23 vials of crack cocaine.

Cell phone evidence gathered during the investigation further demonstrates the defendant's guilt. Call detail records show over 350 call events between the defendant and the straw purchaser between August 2020 and February 2021, including many calls on the days the firearms were purchased. Text messages between the straw purchaser and another member of the conspiracy (identified as Person #1 in the indictment) also indicated that the defendant was using the straw purchaser to illegally obtain firearms, including messages like "Mister looking for u" and "bro said can u goto gun store with him again he going pay u".

Moreover, call detail records show that the defendant communicated with the people that were arrested in possession of the straw-purchased firearms. As mentioned above, R.J. was

---

[5] This firearm is charged in Count Twenty-Seven of the indictment.
[6] This firearm is charged in Count Twenty-Eight of the indictment.

arrested in possession of a Glock, model 29, 10mm semi-automatic pistol that the defendant purported to sell to the straw purchaser. Call detail records for the defendant's phone show 89 call events between the defendant and R.J. between August 2020 and January 2021, including a call on the day the defendant purportedly transferred the firearm to the straw purchaser, and two calls shortly after Jones was arrested. The defendant also had contact with K.W., who was arrested by Philadelphia Police in December 2021 with a Glock, model 45, 9mm semi-automatic pistol that the straw purchaser bought on November 5, 2020.[7] Call detail records for the defendant's phone show more than 20 call events with K.W. between September and December 2020, including two call events the day the firearm was purchased. K.W. was recently arrested again—in May 2023—when authorities executed a search warrant at a residence in southwest Philadelphia and found a firearm purchased by the *defendant* in September 2020. In contrast, call detail records for the straw purchaser's phone show no contact at all with these individuals, indicating that the defendant was the person responsible for diverting the straw-purchased firearms into the illegal firearms market.

During the course of the ATF's investigation, the defendant made false statements to agents in an attempt to conceal his activities, further showing his guilt. ATF agents conducted two interviews of the defendant, one in January 2021, and one in October 2021. In the first interview, the defendant admitted that he knew the straw purchaser discussed above, and the defendant told agents that he sold the straw purchaser between 5 and 7 firearms through an FFL.[8] When asked about the Glock, model 29, 10mm semi-automatic pistol that was recovered in the

---

[7] This firearm is charged in Count Seventeen of the indictment.

[8] On top of his other false statements, the defendant told agents that he "only" sold firearms to this straw purchaser—but ATF records show that he also transferred at least one firearm to Person #1.

possession of R.J. (discussed above), the defendant said he sold the firearm to the straw purchaser and knew nothing about the recovery of the firearm by police. But as mentioned, the defendant's call detail records show that the defendant was in contact with R.J., both around the time the defendant transferred the firearm and around the time the firearm was recovered by law enforcement. In his second interview with investigators, the defendant was asked about a firearm he purchased himself: a Sig Sauer, model P365, 9mm semi-automatic pistol bearing serial number 66A662762 that he had purchased on October 30, 2020. The defendant said that the firearm had been stolen around August 2021, and that he had last seen it sometime around February 2021 when he took it to a firing range because a friend wanted to see it. That statement was false: The firearm had been recovered by law enforcement in Washington, D.C. in November 2020—just 25 days after the defendant purchased it, and months before the defendant claimed to have seen it last. When confronted with this fact, the defendant ended the interview.[9]

The defendant's social media activity also shows the defendant's participation in firearms trafficking. ATF obtained a search warrant in May 2022 for the defendant's Instagram direct messages covering the period of August 1, 2020 to April 1, 2022. The defendant's messages include many pictures of firearms (including firearms that appear to be assault weapons or machine guns, and firearms that appear to have large-capacity magazines), questions from the defendant's contacts about whether the defendant had "got something new?" or whether he was "selling?" a pictured firearm, and a reference to a "trade for another Glock":

---

[9] As discussed further below, the defendant purchased at least 20 firearms between April and December 2020, and at least five of those guns have been recovered by law enforcement. At least one has been used in a shooting. In his interview with agents in October 2021, the defendant said he was unsure if any of his other firearms were missing as he does not keep up with them.

8

| Facebook and Instagram Extraction Target Account: 100001136904899, 6224232392 | | | Conversation Start Date: 01/30/2021<br>Conversation End Date: 03/31/2022<br>Participant(s): ▮▮▮ |

| | | | |
|---|---|---|---|
| 02/15/2021<br>16:38:51 | 6224232392 | Tyrell<br>Taylor | You sent an attachment. |

| Date/Time | Sender ID | Sender<br>Name | Message |
|---|---|---|---|
| | | | <br>attachments/0505216846.jpg |
| 02/15/2021<br>16:39:34 | ▮▮▮ | | Can't see it ,you got something new? |
| 02/15/2021<br>16:40:17 | 6224232392 | Tyrell<br>Taylor | You started a video chat |
| 02/15/2021<br>16:41:10 | 6224232392 | Tyrell<br>Taylor | Video chat ended |
| 02/15/2021<br>16:41:24 | 6224232392 | Tyrell<br>Taylor | You started a video chat |
| 02/15/2021<br>16:44:14 | 6224232392 | Tyrell<br>Taylor | Video chat ended |



| Facebook and Instagram Extraction Target Account: 100001136904899, 6224232392 | | | Conversation Start Date: 01/30/2021<br>Conversation End Date: 03/31/2022<br>Participant(s): ▮▮▮ |

| | | | |
|---|---|---|---|
| 02/16/2021<br>09:09:13 | 6224232392 | Tyrell<br>Taylor | You sent an attachment.<br><br>attachments/0505216917.jpg |
| 02/17/2021<br>11:50:38 | ▮▮▮ | | game sent an attachment. |



Firearm pictured is a Browning, pistol, SN 583847.









**Facebook and Instagram Extraction**
Target Account: 100001136904899, 6224232392

Conversation Start Date: 01/30/2021
Conversation End Date: 03/31/2022
Participant(s):

| | | | |
|---|---|---|---|
| 06/26/2021 11:04:19 | 6224232392 | Tyrell Taylor | You started a video chat |
| 06/26/2021 11:06:21 | 6224232392 | Tyrell Taylor | You sent an attachment. |
| | | | attachments/0505216899.jpg |
| 06/26/2021 11:06:28 | 6224232392 | Tyrell Taylor | You sent an attachment. |
| | | | attachments/0505216835.jpg |
| 06/26/2021 11:08:18 | 6224232392 | Tyrell Taylor | Video chat ended Missed [false] Duration [232404] |



**The firearm pictured is from an Instagram Story by The Bunker Gun Shop on a Glock, model 19, 9 mm caliber pistol, SN: BNNK068.**
**Records show it was purchased by a ▮▮▮ ▮▮▮▮▮▮▮▮ from the Bunker Gun Shop on June 25, 2021**

**Facebook and Instagram Extraction**
Target Account: 100001136904899, 6224232392

Conversation Start Date: 01/30/2021
Conversation End Date: 03/31/2022
Participant(s):

| | | | | |
|---|---|---|---|---|
| 888 | 08/20/2021 16:28:24 | | | game sent a video. |
| | | | | unified_message_3753632211404831.mp4 |
| 889 | 08/20/2021 17:05:18 | 6224232392 | Tyrell Taylor | Wat u get |
| 890 | 08/20/2021 18:21:59 | | | Went with ty mom |
| 891 | 08/20/2021 19:43:36 | 6224232392 | Tyrell Taylor | Nigga got a 19 for trade for another Glock |
| 892 | 08/20/2021 20:12:05 | | | I don't know anyone that would want it except den |



**The building pictured in the video is the Bunker Gun Shop II located at 143 E Butler Ave,   Chalfont , PA**





| | | | | |
|---|---|---|---|---|
| **Facebook and Instagram Extraction** Target Account: 100001136904899, 6224232392 | | | **Conversation Start Date:** 01/30/2021 **Conversation End Date:** 03/31/2022 **Participant(s):** | |
| 03/19/2022 23:12:44 | 6224232392 | Tyrell Taylor | You sent a photo. | |
| 03/20/2022 01:31:43 | | | Selling? | |
| 03/20/2022 01:47:06 | 6224232392 | Tyrell Taylor | Yea they want 13 | |
| 03/20/2022 01:47:26 | 6224232392 | Tyrell Taylor | Some nigga from north | |

| | | | | |
|---|---|---|---|---|
| **Facebook and Instagram Extraction** Target Account: 100001136904899, 6224232392 | | | **Conversation Start Date:** 10/12/2021 **Conversation End Date:** 01/23/2022 **Participant(s):** | |
| 12/11/2021 14:27:40 | | | My man from New York he said if he get me a drac or scorpion 9 trade em the 19x what u think | |
| 12/11/2021 14:28:03 | | | At pistols 625 | |
| 12/11/2021 14:28:20 | | | Ar-pistols* | |
| 12/11/2021 14:33:24 | 6224232392 | Tyrell Taylor | That a deal but only if micro Draco because u can trade for two straps | |
| 12/11/2021 14:35:01 | | | Rd bet so that's cool | |
| 12/11/2021 14:35:14 | | | I need two glocks tho | |

Strikingly, when ATF executed the search warrant in May 2022, the defendant's account contained no direct messages whatsoever between August and December 2020, the period of the firearm purchases charged in the indictment. Considering that the defendant was interviewed by

11

ATF in January 2021, this gap suggests that the defendant deleted data from his Instagram account in January 2021 to avoid detection. The defendant has since deleted his Instagram account entirely.

Taken together, the evidence against the defendant shows that he directed the straw purchase of the 48 firearms charged in the indictment. It also shows the risk that the defendant will attempt to sell or transfer any additional firearms that remain in his control if he is released from custody, as discussed further below.

**B.     Maximum Penalties and Guidelines Range**

The maximum penalty for a violation of Title 18, United States Code, Section 371 (criminal conspiracy) is 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment. The maximum penalty for a violation of Title 18, United States Code, Sections 924(a)(1)(A) (making false statements to an FFL), or for aiding and abetting such a violation, is 5 years' imprisonment, a 3-year period of supervised release, a $250,000 fine, and a $100 special assessment per count. Thus, the defendant faces a total maximum penalty of 140 years in prison, a 3-year period of supervised release, a fine of $7,000,000, and a $2,800 special assessment on the 28 counts in the indictment. A preliminary guidelines analysis indicates an offense level of 28 (including enhancements for the number of firearms involved, the involvement of at least one firearm with an obliterated serial number, and engagement in the trafficking of firearms), and a criminal history category of I, meaning the defendant faces a range of 78-97 months in prison. *See* USSG § 2K2.1(a)(6), (b)(1)(C), (b)(4), and (b)(5).

### C.    Additional Pending Charges

The defendant is currently the subject of pending criminal charges in Delaware County

for driving under the influence, distribution of a small amount of marijuana/not for sale, and

driving an unregistered vehicle. *See Commonwealth v. Mister Tyrell Taylor*, No. MJ-32249-CR-

0000256-2023 (Pa. Magisterial Dist. Ct.). A preliminary hearing is scheduled for August 29,

2023.

## II.    ARGUMENT

Pre-trial detention is appropriate where "no condition or combination of conditions will

reasonably assure the appearance of the person as required and the safety of any other person and

the community." 18 U.S.C. § 3142(e)(1). Pursuant to 18 U.S.C. § 3142(g), the Court considers

the following factors in deciding whether a person should be detained before trial:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, . . . or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
> (2) the weight of the evidence against the person;
> (3) the history and characteristics of the person, including

>> (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

>> (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

> 4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

13

Here, the charges against the defendant are serious, and the evidence supporting them is strong. The defendant is charged with directing the straw purchase of 48 firearms. The recovery of at least 17 of those firearms by law enforcement, interviews with members of the straw-purchasing conspiracy, cell phone records, the defendant's messages about firearms on social media, and the defendant's attempts to conceal his activities from investigators all show that he is guilty.

The evidence of the straw-purchasing conspiracy also demonstrates the risk of releasing the defendant, as does the evidence surrounding the defendant's own firearm purchases. In addition to the 48 straw-purchased firearms, the defendant purchased at least 20 firearms himself between April and December 2020. At least five of those firearms have been recovered by law enforcement—including the firearm mentioned above that was recovered just 25 days after it was purchased, which the defendant lied about when questioned by investigators.

Importantly here, all of the firearms that have *not* been recovered by law enforcement—approximately 31 straw-purchased firearms and approximately 15 firearms the defendant bought himself—are unaccounted for. In his last interview with agents, in October 2021, the defendant claimed to be unsure whether any of his firearms were missing because he does not keep up with them. Thus, the defendant neither purported to have his firearms in his possession, nor did he claim to have lost all of them. The evidence indicates that the defendant transferred both straw-purchased firearms and firearms he purchased himself to other people. And while the firearms discussed herein were *purchased* prior to December 2020, the *recoveries* of the defendant's firearms have continued since then. One of the straw-purchased firearms charged in the

14

indictment was recovered as recently as September 2022,[10] and as mentioned above, one of the firearms the defendant purchased himself was recovered as recently as May 2023—in the same residence as one of the defendant's contacts, K.W., who had previously been arrested with one of the defendant's straw-purchased guns.

Releasing the defendant now would afford him the opportunity to transfer any remaining firearms (straw-purchased or otherwise) in his possession. He has the contacts and other means to do so, as well as the incentive—both for financial gain, and to conceal his illegal activities. Giving the defendant the opportunity to transfer more firearms would create a significant risk that more of the defendant's firearms would be used in shootings or other crimes.

There are no conditions of release that would reasonably mitigate this risk. Based on interviews during the investigation of the charged conspiracy, ATF has learned that at the defendant's prior address, where he lived until just a few months ago, the defendant kept a significant number of firearms and firearm parts and accessories. As of the time of this filing, the government is unaware of any credible evidence that could reasonably assure that the defendant is not similarly keeping firearms, firearm parts, or accessories at the new address the defendant reported to Pretrial Services on July 6, 2023. Yet even if, for instance, the defendant were to submit statements from relatives living at his new address that there are no firearms in the residence to their knowledge, that would not address the risk that the defendant has firearms stored in discrete places at his new residence, or at other residences, in his car, in storage units, or elsewhere. There are no conditions of release that would reasonably assure the defendant has

---

[10] Specifically, a Glock, model 23, .40 caliber semi-automatic pistol purchased on December 16, 2020 was recovered by Philadelphia Police on September 29, 2022. This firearm is charged in Count Twenty-Six of the indictment. When recovered, the firearm was equipped with a "switch" allowing it to be converted into a fully automatic firearm.

no firearms available to him, or that he is not in contact with any prior or potential recipients of his firearms, so that the defendant cannot sell or otherwise transfer any firearms that could then be used in crimes.

The risk that any conditions of release would fail to protect the community is only magnified by the defendant's past false statements to investigators and other attempts to conceal his activities, which also show the risk that the defendant will fail to appear if released. As set forth above, the defendant made demonstrably false statements to investigators about firearms recovered by law enforcement. Further, the primary object of the defendant's straw-purchasing scheme was to fill federal firearms records with false statements so the defendant could obtain and then transfer firearms without being detected. Since learning of the ATF investigation into his conduct, the defendant has deleted his incriminating social media messages. The defendant is now facing significant criminal penalties, amplifying his incentive to flee, or, more concerning, to hide information from law enforcement if given the opportunity, including information about the whereabouts of the defendant's firearms.

Pretrial release in this case would accordingly pose an unacceptable risk of harm to the community. The Defendant should be detained pending trial.

III.    **CONCLUSION**

No condition or combination of conditions of release will reasonably assure the safety of

the community or the presence of the defendant as required. Therefore, the government

respectfully submits that its Motion for Pretrial Detention should be granted.


DATE: July 7, 2023                          Respectfully submitted,

                                            JACQUELINE C. ROMERO
                                            United States Attorney


                                            ALEXANDER B. BOWERMAN
                                            Special Assistant United States Attorney

17

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA    :

v.    :    CRIMINAL NO. 23-268

MISTER TYRELL TAYLOR    :


## [PROPOSED] PRETRIAL DETENTION ORDER

AND NOW, this        day of June, 2023, after an evidentiary hearing and argument of counsel for the government and the defendant, the Court finds that:

        (a)    the government has proved by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the defendant as required; and

        (b)    the government has proved by clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of other persons and the community, as required by Title 18, United States Code, Section 3142(e).

The Court makes the following findings of fact:

This case is appropriate for detention under Title 18, United States Code, Section 3142(e) because:

        1.    A grand jury has indicted the defendant for violating 18 U.S.C. § 371 (conspiracy) and 18 U.S.C. §§ 924(a)(1)(A) and 2 (aiding and abetting false statements to federal firearms licensees).

2.      The evidence in this case is strong. Interviews with members of the conspiracy, cell phone records, the defendant's messages about firearms on social media, and the defendant's statements to investigators all indicate that the defendant directed the straw purchase of 48 firearms, approximately 17 of which have been recovered by law enforcement.

3.      The total maximum statutory penalty the defendant faces is 140 years in prison, a 3-year period of supervised release, a fine of $7,000,000, and a $2,800 special assessment. The preliminary estimated guidelines range for the charged offenses is 78-97 months. Accordingly, the defendant has a substantial incentive to flee.

4.      The nature of the defendant's crime, along with his attempts to conceal his activities, establishes that no condition of release, or combination of conditions, will reasonably assure the safety of the community or reasonably assure the appearance of the defendant as required. 18 U.S.C. § 3142(e).

5.      The strength and nature of the case against the defendant and the history, characteristics and circumstances of the defendant, combined with the strong likelihood that the defendant will be incarcerated for a significant period of time, establishes the defendant's danger to the community and increases the high risk that the defendant will not appear as required by the Court.

Therefore, IT IS ORDERED that the defendant be committed to the custody of the

Attorney General for confinement in a correction facility separate, to the extent practicable, from

persons awaiting or serving sentences or being held in custody pending appeal; that the

defendant be afforded reasonable opportunity for private consultation with counsel; and that, on

order of a Court of the United States, or on request of an attorney for the government, the person

in charge of the corrections facility in which the defendant is confined deliver the defendant to a

United States Marshal for the purpose of an appearance in connection with a court proceeding.


BY THE COURT:


_____
HONORABLE ELIZABETH T. HEY
United States Magistrate Judge

**CERTIFICATE OF SERVICE**

I certify that a copy of the Government's Motion for Pretrial Detention and Proposed

Order was served by CM/ECF upon all counsel of record.


ALEXANDER B. BOWERMAN
Special Assistant United States Attorney


DATE:  July 7, 2023